Eva DAPELO, Plaintiff,

v.

BANCO NACIONAL DE MEXICO a/k/a Banamex, Patrick Sabino, John Beauchemin and Mary Buono, Defendants.

No. 91 Civ. 0093 (JSM).

United States District Court,
S.D. New York.

June 20, 1991.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

Plaintiff brings this action for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., sex discrimination under Title VII of the Civil Rights Act of 1964, both age and sex discrimination under the New York's Human Rights Law, Exec.Law § 296 et seq., for retaliation under these statutes, and for common law slander, libel and harassment.

Basically, plaintiff, a former officer in defendant Banco Nacional De Mexico's ("Banamex's") accounting department, alleges that she was passed over for a promotion to the position of manager due to her age and sex. Plaintiff also alleges that Banamex retaliated against her after she filed an EEOC charge. As part of the retaliation, plaintiff contends that after the individual defendants became aware of plaintiff's EEOC claim, they drafted employee evaluations which contained false statements which defamed plaintiff's reputation.

Plaintiff demands reinstatement, lost earnings and compensatory and punitive damages. Included within the damages sought are those allegedly resulting from the emotional and physical injuries plaintiff suffered due to defendants' conduct.

The matter is now before the Court on defendants motion, pursuant to Fed.R. Civ.P. 12(b)(1) and (6), to dismiss all of plaintiff's state law claims.[1] For the reasons discussed below, defendants' Rule 12(b)(1) motion is granted.

## DISCUSSION

Having considered the relevant factors and in light of the different remedies sought by plaintiff in her state law and federal claims and the effect such remedies would have on the trial process, the Court declines to exercise pendent jurisdiction of plaintiff's state law claims.

■ Since plaintiff's state and federal claims arise out of a common nucleus of operative facts, the Court has the power to hear both plaintiff's federal and state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Nevertheless, it is an open question whether the Court *should* exercise its discretion and retain jurisdiction over plaintiff's pendent state causes of action. The district courts in this Circuit are split on this issue. *Cf. e.g., Patel v. Lutheran Medical Center, Inc.,* 753 F.Supp. 1070, 1075 (E.D.N.Y.1990); *Martel v. Dean Witter Reynolds, Inc.,* 738 F.Supp. 53, 57 (E.D.N.Y.1990); *Kaczor v. Buffalo,* 657 F.Supp. 441 (W.D.N.Y.1987); with *Realmuto v. Yellow Freight System, Inc.,* 712 F.Supp. 287 (E.D.N.Y.1989); *Burger v. Health Ins. Plan,* 684 F.Supp. 46 (S.D.N.Y. 1988); *Giuffre v. Metropolitan Life Ins. Co.,* 129 F.R.D. 71 (S.D.N.Y.1989); *Deutsch v. Carl Zeiss, Inc.,* 529 F.Supp. 215, 219 (S.D.N.Y.1981). Further complicating matters in the present case is the addition of state law claims—here libel, slander and harassment—not arising under the Human Rights Law. *See Patel, supra,* 753 F.Supp. at 1078 (exercising pendent jurisdiction with respect to Human Rights Law claim but not over tortious interference with contract claim).

Defendants argue that because plaintiff's state claims seek compensatory and punitive damages for her alleged emotional and physical injuries while plaintiff's recov-

---

1. Specifically, defendants move to dismiss plaintiff's second and fourth claims asserting age and sex discrimination under New York's Human Rights Law, the seventh and eighth claims seeking to hold defendant Banamex liable under the Human Rights Law for retaliation, plaintiff's tenth and eleventh claims asserting that Banamex, Beauchemin and Sabino slandered and libeled her and the twelfth claim asserting that Banamex and Buono harassed plaintiff in retaliation for filing the EEOC charge.

Defendants do not move to dismiss plaintiff's first and third claims, which respectively allege age discrimination under ADEA and sex discrimination under Title VII for defendant Banamex's failure to promote her, plaintiff's fifth and six claims asserting that she was retaliated against for filing an EEOC charge and plaintiff's ninth claim alleging that the corporate defendant violated ADEA by replacing plaintiff with a younger female.

ery under ADEA and Title VII is limited to reinstatement and back pay, the exercise of pendent jurisdiction would inject additional issues that will cause jury confusion and prejudice the defendants. Plaintiff responds that the exercise of pendent jurisdiction will further the policy of judicial economy and will prevent duplicative litigation. These arguments are premised upon factors articulated by the Supreme Court in *Gibbs, supra,* 383 U.S. at 726–28, 86 S.Ct. at 1139–40.

■ After consideration of the factors listed above, the Court, for the following reasons, declines to exercise pendent jurisdiction over the plaintiff's state law claims. First, the Court notes the different remedies plaintiff's claims afford. Specifically, while neither ADEA nor Title VII allows for the recovery of either compensatory or punitive damages, *see Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143 (2d Cir.1984) (ADEA); *Carrero v. New York City Housing Authority,* 890 F.2d 569, 581 (2d Cir.1989),[2] New York State's Human Rights Law and plaintiff's common law claims do so. *See Batavia Lodge No. 196, etc. v. New York State Div. of Human Rights,* 35 N.Y.2d 143, 359 N.Y.S.2d 25, 316 N.E.2d 318 (1974) (Human Rights Law). Moreover, the compensatory and punitive damages plaintiff seeks also include those damages resulting from the physical and emotional injuries plaintiff contends she suffered as a result of defendants' conduct. As a result, the exercise of pendent jurisdiction would inject into a discrimination case questions that are irrelevant to the federal claims, including the plaintiff's mental state and physical condition as well as the state of plaintiff's reputation. Permitting such evidence to be introduced would, thus, unduly complicate a relatively straightforward employment discrimination claim. *See Realmuto, supra,* 712 F.Supp. at 287; *Burger, supra,* 684 F.Supp. at 50.

Moreover, as Judge Conboy recognized in *Burger,*

[a]s the plaintiff has demanded a jury trial, to which she is entitled under the ADEA, both the pendent claims and the claim under the ADEA would be for the jury. Placing plaintiff's state law claims, some of which involve questions of plaintiff's mental state and defendant's malice that are irrelevant to an ADEA claim, before the jury could lead to jury confusion on the damages issue.

*Id.* at 50. The Court agrees that such proof could prejudice the jury in plaintiff's favor and could confuse the jury on the damage issues.

In addition, there exists a serious question of state law as to whether plaintiff has an existing cause of action premised upon New York's Human Rights Law. Specifically, defendants contend that plaintiff's claims based upon the Human Rights Law must be dismissed because plaintiff, prior to the commencement of this action, elected to have such claims pursued administratively.

Defendants' argument is premised upon Executive Law § 297(9), which provides that:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction ... unless such person filed a complaint with the State Division of Human Rights hereunder or with any local commission on human rights.

This election of remedies provision, thus, allows an aggrieved individual to seek relief from either the State Division of Human Rights ("SDHR") or any court of competent jurisdiction but not both. As a result, both the New York State courts and the federal courts have dismissed claims where the plaintiff had previously selected to pursue a claim administratively with the SDHR by filing a claim with that agency. *See Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F.Supp. 759 (S.D.N.Y. 1986); *Klotsche v. New York,* 621 F.Supp. 1113 (S.D.N.Y.1985); *Koster v. Chase Man-*

---

2. The ADEA, however, does provide for liquidated damages that are punitive in nature. *See*

29 U.S.C. § 626(b).

*hattan Bank, N.A.,* 609 F.Supp. 1191 (S.D.N.Y.1985); *Emil v. Dewey,* 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980).

In the present case, the plaintiff did not directly file a claim with the SDHR. Instead, as required before one can seek relief under ADEA in federal court, plaintiff first filed a claim of discrimination with the EEOC. The EEOC, in turn, referred the claim to the SDHR. This was necessitated by the fact that no charge may be filed with the EEOC if a state or local agency exists to deal with such claims until 60 days after proceedings have been commenced under state and local law. To avoid confusion, the EEOC has instituted a policy of automatically referring a charge filed with it to the appropriate state or local agency and then holding the EEOC charge in suspense for 60 days.

Since a charge filed with the EEOC is also automatically filed with a state or local agency for initial review, a question has arisen in New York as to whether the referral of a claim by the EEOC to the SDHR constitutes an election of remedies under § 297(9). This question was answered in the affirmative by the First Department of New York's Appellate Division in *Scott v. Carter–Wallace, Inc.,* 147 A.D.2d 33, 541 N.Y.S.2d 780 (1st Dep't), *app. dism.,* 75 N.Y.2d 764, 551 N.Y.S.2d 903, 551 N.E.2d 104 (1989).[3]

However, while holding that the automatic referral to the SDHR of an administrative complaint filed with the EEOC constitutes an election of remedies under § 297(9) and thus precludes the individual from subsequently commencing a judicial action in state court under state law, the *Carter–Wallace* court did not address the issue present in the instant case; namely the application of the election of remedies doctrine by a federal court. Indeed, the *Carter–Wallace* court expressly stated that "[W]hat effect this ruling might have on a federal court's decision to exercise pendent jurisdiction over a Human Rights Law claim we cannot say." 541 N.Y.S.2d at 783.

Relying on *Scott,* defendants argue that because New York bars a plaintiff who has filed a charge with the EEOC from suing under the Human Rights Law in state court, a federal court sitting in New York should also bar such a plaintiff from suing under the Human Rights Law in federal court.

On the other hand, plaintiff relies on a number of decisions in this district which have held that *Carter–Wallace* does not bar a plaintiff whose administrative claim was referred by the EEOC to the SDHR from pursuing state law discrimination claims in federal, as opposed to state, court. *Sangeniti v. Mutual of America,* 1990 WL 204190 (S.D.N.Y. Dec. 10, 1990) (Mukasey, J.); *Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188, 198 (S.D.N.Y.1990) (Conner, J.); *Tasaka v. DDB Needham Worldwide, Inc.,* 729 F.Supp. 1014, 1016–17 (S.D.N.Y.1990) (Stanton, J.); *Williams v. J. C. Penney Co.,* 1990 WL 170481 (S.D.N.Y.1990) (Edelstein, J.); *Olsen v. Citibank, N.A.,* 52 Fair Empl.Prac.Cas. (BNA) 1571, 53 Empl.Prac. Dec. ¶ 39,829, 1990 WL 41709 (S.D.N.Y. April 6, 1990) (Lowe, J.); *Giuntoli v. Garvin Guybutler, Corp.,* 726 F.Supp. 494, 502 (S.D.N.Y.1989) (Ward, J.).

In *Carter–Wallace,* New York's highest court never addressed the merits of the

---

3. The *Scott* court reasoned as follows:

> to distinguish between grievants on the basis of which agency they happen to file with would be to put a grievant who, desirous of pursuing his Title VII remedies and astute to the literal requirements of that statute, deliberately files with the State Division in a worse position than an unastute grievant who, oblivious to the availability of judicial relief in any forum but desirous of vindicating his right not to be discriminated against, by chance files with the EEOC through sheer luck. The astute grievant, like the unastute one who has

> the bad luck of filing with the State Division, would be barred from having his Human Rights Law claim heard in both Federal and State court, whereas the unastute grievant who files with the EEOC would not only likely have his Human Rights Law claim heard in Federal Court as pendent to this Title VII claim, but could, should matters not go well for him in the State Division withdraw from that agency and commence an alternative proceeding in State Court.
>
> 541 N.Y.S.2d at 782.

issue since plaintiff's request for permission to appeal the First Department's decision was denied on the ground that plaintiff had waived any right to seek such an appeal.

As one court recently recognized, a federal district court "need not mechanically apply [the *Carter–Wallace* ] outcome to the instant facts" since " '[d]ecisions rendered by lower intermediate courts are not controlling on federal courts construing state law when, as here, the state's highest court has not ruled on the issue.' " *Olsen v. Citibank, supra,* at p. 2, *quoting, Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). *See also Calvin Klein Ltd. v. Trylon Trucking Corp.,* 892 F.2d 191, 195 (2d Cir.1989) ("Absent a rule of decision formulated by the New York Court of Appeals, we are not bound by the opinions issued by the state's lower courts"), *citing, Plummer v. Lederle Labs.,* 819 F.2d 349, 355 (2d Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987).

Generally, where the state's highest court has not addressed the relevant issue, a federal district court's function is to sit as a state court and attempt to determine how the New York Court of Appeals would decide the merits of the issue. *In re Joint Eastern & Southern Dist. New York Asbestos Litigation,* 897 F.2d 626, 636 (2d Cir.1990).

Were this Court to decide the issue as an original matter, it would be reluctant to follow those cases which have concluded that a state cause of action under the Human Rights Law may exist in federal court even though the plaintiff would have no cause of action in state court. The statute provides that "an aggrieved party shall have a cause of action in any court ... *unless* such person filed a complaint with the State Division of Human Rights." § 297(9) (emphasis added). If, as *Carter–Wallace* holds, it makes no difference under the statute "whether [the] filing was made by the grievant himself or the EEOC

for him" (541 N.Y.S.2d at 783), the plaintiff has "no cause of action." Thus, it is hard to rationalize the holding of *Carter–Wallace* with its statement, "What effect this ruling might have on a federal court's decision to exercise pendent jurisdiction over a Human Rights Law claim we cannot say." 541 N.Y.S.2d at 783. The issue is not one of pendent jurisdiction; the issue is whether a state cause of action exists.

The Supreme Court in *United Mine Workers v. Gibbs, supra,* listed, as one of the factors that a district court should consider in determining whether to exercise pendent jurisdiction, whether the state claims present unsettled issues of state law such that comity would counsel leaving the decision to the state courts. *Id.* at 726–27, 86 S.Ct. at 1138–40.[4]

In light of the confusion created by *Scott v. Carter–Wallace,* it appears appropriate to allow plaintiff to pursue the Human Rights Law claim in the state courts and hopefully obtain a resolution by the New York Court of Appeals which will know that at least one federal court is prepared to hold that if a state cause of action does not exist in the state courts, it does not exist at all. *See Fay v. South Colonie Central School District,* 802 F.2d 21, 34 (2d Cir.1986); *Independent Bankers Ass'n v. Marine Midland Bank, N.A.,* 757 F.2d 453, 463–65 (2d Cir.1985), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986).

Standing alone, this unsettled issue of state law may not have necessarily prevented the Court from exercising pendent jurisdiction. However, the Court finds dismissal of plaintiff's state law claims appropriate when this unsettled state law issue is coupled with the fact that the remedies plaintiff seeks under her state law claims would, as previously discussed, complicate a relatively straight forward employment discrimination case and lead to possible jury confusion and prejudice to the defendants.

**4.** The factors listed by the Supreme Court in *Gibbs* were recently codified at 28 U.S.C. § 1367(c), which includes in subsection (1) a provision permitting a Court to decline to exercise jurisdiction if the "claim raises a novel or complex issue of State law."

Accordingly, the Court declines to exercise its discretion to retain pendent jurisdiction over all of plaintiff's state law claims. Given this decision, the Court need not address defendants' Rule 12(b)(6) attack on the sufficiency of plaintiff's slander, libel and harassment claims.

## CONCLUSION

Defendants' Rule 12(b)(1) motion to dismiss plaintiff's state law claims is granted. As the Court directed at oral argument held before the undersigned on June 14, 1991, the parties are ORDERED to complete discovery on plaintiff's remaining claims by September 30, 1991. A Joint Pre–Trial Order shall be submitted by the parties on or before October 31, 1991. Following the Court's review of the Pre–Trial Order, a final Pre–Trial Conference will be scheduled.

SO ORDERED.